IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| PATRICK MALONE, AS GUARDIAN OF B.R.M., <br><br> Plaintiff, <br><br> v. <br><br> WOLTERS KLUWER UNITED STATES, INC.; PROVATION MEDICAL, INC.; DEARBORN NATIONAL LIFE INSURANCE COMPANY GROUP LIFE POLICY NUMBER F019103-0001, AN EMPLOYEE WELFARE BENEFIT PLAN; and THE DEARBORN GROUP f/k/a DEARBORN NATIONAL LIFE INSURANCE COMPANY, <br><br> Defendants. | No: |

## COMPLAINT

Plaintiff Patrick Malone, as guardian of B.R.M., states as follows for his Complaint against Wolters Kluwer United States, Inc. ("Wolters Kluwer"), ProVation Medical, Inc. ("ProVation"), Dearborn National Life Insurance Company Group Policy No. F019103-0001 (the "Group Policy"), and The Dearborn Group f/k/a Dearborn National Life Insurance Company ("Dearborn").

## NATURE OF CASE

1. This is a civil complaint brought under ERISA § 502, 29 U.S.C. § 1132, and federal common law, regarding breach of the terms of an employee benefit plan and for the purpose of compelling Defendants to provide certain life insurance benefits to Plaintiff, in the

amounts and at the coverage levels promised and for recovery of damages, costs, attorney fees, and other such relief as may be just and appropriate.

## PARTIES

2. Plaintiff is the legal guardian of B.R.M.. Ms. Malone is the beneficiary, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(8), in a welfare plan called Group Policy No. F019103-0001 (the "Group Policy") by virtue of her late mother, Katherine R. Malone's employment with ProVation Medical, which at all relevant times was a subsidiary of Wolters Kluwer. At the time of Katherine Malone's death, she and Ms. Malone resided in Nashville, Davidson County, Tennessee.

3. Wolters Kluwer is headquartered in Illinois and conducts business in Davidson County, Tennessee.

4. ProVation Medical is headquartered in Minnesota and conducts business in Davidson County, Tennessee.

5. The Group Policy is a welfare benefit plan within the meaning of ERISA §3(1), 29 U.S.C. § 1002(1). The Group Policy was issued by Defendant Dearborn National to Wolters Kluwer as the policyholder.

6. Dearborn National is headquartered in Illinois and conducts business in Davidson County, Tennessee.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 1132(e)(1).

8. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2).

## FACTUAL BACKGROUND

## THE GROUP POLICY

9. Katherine Malone was hired by ProVation Medical, then a subsidiary of Wolters Kluwer, on or about December 12, 2011.[1]

10. By virtue of her employment, Katherine Malone was eligible to participate in Wolters Kluwer's Group Policy, two components of which were Basic Life and Accidental Death & Disability Insurance ("AD&D") policies, with an effective date on or about December 12, 2011. A copy of the Group Policy is attached hereto as Exhibit 1.[2]

11. Wolters Kluwer was designated as the policyholder and Plan Administrator of the Group Policy.

12. Dearborn National issued the Group Policy and, during the relevant time period, undertook responsibilities in the administration of the Group Policy.

13. While employed by Wolters Kluwer, Katherine Malone was a participant in the Group Policy, including both the Basic Life and AD&D plans.

14. Wolters Kluwer paid 100% of the policy premiums during Katherine Malone's employment.

15. At the time of Katherine Malone's death on August 3, 2017, she was employed by Wolters Kluwer and was a participant in the Group Policy.

---

[1] For ease of reference, Plaintiff will refer to Katherine Malone's employer as Wolters Kluwer throughout this complaint because Wolters Kluwer was both the Policyholder and owner of ProVation Medical.

[2] For the Court's ease of reference, relevant provisions of the Group Policy have been highlighted in yellow in Exhibit 1.

16. Katherine Malone named her daughter, B.R.M., as the beneficiary of the Group Policy.

17. The Group Policy's Basic Life Benefit Amount was defined as Katherine Malone's "*Annual Earnings*, rounded to the next higher $1,000 if not already a multiple of $1,000, multiplied by 1.5 . . . ." (Exhibit 1 at 2).[3]

18. The Group Policy defined "Annual Earnings" to include "gross annual income from the *Policyholder* from September 1, through August 31 [and] includes income actually received from commissions . . . ." (*Id.*).

19. With respect to the term "commissions," the Group Policy provided that "Commissions will be the **52 full calendar week period of *Your* employment with *Your* Employer just prior to the date of Loss.**" (*Id.*).

20. The Group Policy's AD&D provisions contained identical definitions. (*Id.* at 3).

21. Additionally, the Group Policy AD&D Coverage Amount is the "amount equal to the *Employee* Basic Life amount." (*Id.*). Accordingly, the AD&D benefit doubled the Basic Life Benefit Amount.

### KATHERINE MALONE'S DEATH AND GUARDIANSHIP

22. On August 3, 2017, Katherine Malone died in an accidental death when she was run over by a logging truck.

23. On September 14, 2017, Plaintiff was appointed as guardian of the real and personal property of his and Katherine Malone's daughter, B.R.M..

---

[3] References to page numbers indicate the page number marked at the bottom of the page of Exhibit 1.

02551056 7

4

## DEFENDANTS' REFUSAL TO PAY FULL DEATH BENEFIT

24. Following Katherine Malone's death, Plaintiff, as guardian, notified Dearborn National of the loss and filed a claim of loss pursuant to the Group Policy.

25. On September 19, 2017, Wolters Kluwer submitted a Death Claim Form on behalf of Katherine Malone to Dearborn National. Dearborn National confirmed receipt of this Death Claim Form.

26. Unfortunately, the Death Claim Form listed Katherine Malone's "Annual Earnings" as only $102,502.77. That amount erroneously excluded commissions earned by Katherine Malone and only included her gross annual income.

27. Using this incorrect Annual Earnings figure, Dearborn National issued a check for $311,671.12, which constituted 1.5x Katherine Malone's Annual Earnings ($153,754.15), multiplied by two for the AD&D benefit ($309,000 after rounding to nearest $1,000), plus interest.

28. Plaintiff and Defendants agree on the formula for calculating the total death benefit, but if the Annual Earnings input is incorrect, as it was here, then the death benefit will also be incorrect, as it was here.

29. Realizing the error, Plaintiff immediately sought to correct it.

30. In June 2018, Plaintiff, as guardian, sought from Wolters Kluwer Katherine Malone's payroll records and also sought a corrected Death Claim Form.

31. On October 8, 2018, Wolters Kluwer submitted to Dearborn National an Amended Death Claim Form. The Annual Earnings figure was increased to $189,000, which claimed to have accounted for Katherine Malone's earned commissions. Using the same formula

described in Paragraphs 27 and 28, Dearborn National issued an additional check of $263,146.56 to account for the previous error and shortfall.

32. Upon information and belief, Wolters Kluwer based this Amended Death Claim Form on Katherine Malone's earnings—gross annual income of $102,502.77 and commissions of approximately $86,497.23—from September 1, 2015 through August 31, 2016.

33. The revised Annual Earnings figure used in the Amended Death Claim Form, did not reflect Katherine Malone's gross annual income from September 1, 2016 to the date of her death, August 3, 2017. Had it done so, her gross annual income would have been $104,762.54.

34. Nor did the Amended Death Claim Form properly account for Katherine Malone's commissions by including the 52 full calendar week period prior to her accidental death. Had it done so, her commissions figure would have been $279,337.59.

35. These two figures combined constitute an accurate Annual Earnings figure, which totals $384,100.13

36. Accordingly, the figure included in the Amended Death Claim Form remained incorrect and lower than that to which Ms. Malone was entitled.

37. On November 8, 2018, Plaintiff demanded full payment of the Life Benefit owed to B.R.M. pursuant to the Group Policy.

38. On November 15, 2018, Dearborn Life denied Plaintiff's claim for any additional payment of benefits.

39. In that denial, Dearborn National explained: "Please be advised that this claim for benefits received by Dearborn National was processed based on the information provided from the employer, Wolters Kluwer."

02551056 7                                                         6

Case 3:20-cv-00942   Document 1   Filed 10/30/20   Page 6 of 12 PageID #: 6

40. Accordingly, Dearborn National assumed that Katherine Malone's Annual Earnings (including commissions) was $189,000 because that was the figure erroneously provided by Wolters Kluwer in the Amended Death Claim Form.

41. In the event Plaintiff chose to appeal, Dearborn National instructed him to "supply evidence indicating that the employer's information provided to Dearborn National was incorrect."

42. In April 2019, in response to further requests from Plaintiff, Wolters Kluwer, without reference to any documents or records, notified Plaintiff that Katherine Malone's commissions (not gross annual income) for the 52 full weeks before her death totaled $191,188.05. This figure is not only unsupported by Wolters Kluwer's payroll documents, but even more confusingly is not reflected in the October 2018 Amended Death Claim Form that Wolters Kluwer provided to Dearborn National.

43. If this $191,188.05 figure was actually used, despite its lack of support and accuracy, the benefit would total $873,572.25—roughly $300,000 more than what Plaintiff has received to date.

44. Wolters Kluwer claims to have forwarded this larger, but still incorrect, information to Dearborn National's legal team, but that either did not occur or it landed on deaf ears.

### PLAINTIFF'S APPEAL OF DEARBORN NATIONAL'S DENIAL

45. On May 14, 2019, counsel for Plaintiff served on Dearborn National an appeal and written request for the review of Dearborn National's November 15, 2018, denial.

46. In the appeal, counsel for Plaintiff explained in detail and attached supporting materials demonstrating why Wolters Kluwer and Dearborn National were in error.

47. Counsel for Plaintiff also attached Katherine Malone's payroll records from Wolters Kluwer. Plaintiff cited these payroll records extensively in his appeal letter and used them to calculate the correct "Annual Earnings" amount as defined by the Group Policy.

48. Per the Group Policy, the Annual Earnings consisted of two components: Katherine Malone's (a) "gross annual income from the *Policyholder* from September 1 to August 31" and (b) "income actually received from commissions."

49. Katherine Malone's gross annual income paid by Wolters Kluwer from September 1, 2016, through her death on August 3, 2017, was $104,762.54.

50. Commissions is defined in the Group Policy as "the 52 full calendar week period of *Your* employment with *Your Employer* **just prior to the date of Loss**." Exhibit 1 at 2, 3.

51. Wolters Kluwer's payroll records show that from August 1, 2016 through August 3, 2017 Katherine Malone's commissions totaled $279,337.59.

52. Combined, Katherine Malone's gross annual income and commissions in the year immediately preceding her death total $384,100.13. This Annual Earning figure is then multiplied by 1.5 to reach Basic Life Benefit Amount: $576.150.19. This figure is then doubled to account for the AD&D Benefit, which comes to $1,152,300.38.

53. This proper calculation would roughly double the death benefit that has already been paid to Plaintiff, as his daughter's guardian, pursuant to the terms of the Group Policy.

54. On August 13, 2019, Dearborn National denied Plaintiff's appeal and "concluded the calculation of Ms. Malone's Basic Life and Accidental Death benefits are correct."

55. At no point in its denial did Dearborn National contest Katherine Malone's eligibility, the formula by which the benefits would be paid, or Ms. Malone's entitlement to the Basic Life and AD&D benefits.

02551056 7

8

Case 3:20-cv-00942   Document 1   Filed 10/30/20   Page 8 of 12 PageID #: 8

56. Instead, Dearborn National stated that it "must consider the period of September 1, 2015 through August 31, 2016" because "[t]his is the fiscal year and is consistent with what Wolters Kluwer provided to us and for which premiums were paid."

57. Dearborn National then argued that Plaintiff's "assertion that we consider all of her 2017 commission income is not supported by the terms of the Policy and not consistent with industry standards." This clearly contradicts the plain language of the Group Policy, which provides that "Commissions will be the 52 full calendar week period of *Your* employment with *Your Employer just prior* to the date of loss." (Emphasis added)

58. Dearborn National informed Plaintiff that he had exhausted his administrative remedies and could bring a civil action under ERISA 502(a).

59. Having exhausted his administrative remedies, Plaintiff now brings this action for relief.

### COUNT I: ACTION UNDER ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), TO RECOVER FULL BENEFITS

60. Plaintiff restates and incorporates paragraphs 1 through 59.

61. At all times prior to her accidental death, Katherine Malone fulfilled the eligibility requirements to receive the full amount of Basic Life Benefit and AD&D Benefit under the Group Policy.

62. Throughout her roughly six years as an employee for Wolters Kluwer, she remained a full-time employee and Wolters Kluwer paid all premiums due for Basic Life and AD&D benefits.

63. The Group Policy is clear that commissions would be calculated for the "52 full calendar week period of *Your* employment with *Your Employer* **_just prior_** to the date of Loss." (Exhibit 1 at 2, 3) (emphasis added).

64. The appropriate period for calculating Katherine Malone's earned commissions are the 52 full weeks just prior to the date of her death on August 3, 2017.

65. In September 2017, Wolters Kluwer timely submitted a Death Claim Form that excluded *all* of Katherine Malone's commissions for any period of time during her employment.

66. In October 2018, Wolters Kluwer timely submitted an Amended Death Claim Form that accounted for Katherine Malone's commissions, but erroneously calculated her earned commissions for the period from September 1, 2015 through August 31, 2016.

67. That time period is not the 52 full weeks just prior to the date of Katherine Malone's death.

68. Instead, the week of September 1, 2015, the starting point for Wolters Kluwer's erroneous calculation, is actually 100 weeks before her death.

69. Despite Plaintiff's repeated requests, neither Wolters Kluwer or Dearborn National will acknowledge or correct this error.

70. In August 2019, Dearborn National argued in denying Plaintiff's administrative appeal that it must use the September 1, 2015 through August 31, 2016-time period to calculate Katherine Malone's benefits because it is consistent with "the fiscal year" and is "what Wolters Kluwer provided to us and for which premiums were paid."

71. This not only ignores Katherine Malone's payroll documents, but also Wolters Kluwer's (still incorrect) updated commissions calculations from April 2019.

72. When asked by Plaintiff to consider the 52 full week period immediately before Katherine Malone's death for purposes of calculating commissions, as provided by the Group Policy's plain language, Dearborn National argued that such a calculation was "not supported by the terms of the policy and not consistent with industry standards."

73. Based on the above, Wolters Kluwer's failure to provide an accurate Death Claim Form and Dearborn National's denial of the full amount of Plaintiff's Basic Life and AD&D Benefits was arbitrary and capricious and otherwise in violation of the Group Policy.

**WHEREFORE**, Plaintiff requests that this Court grant the following relief in his favor and against Defendants, Wolters Kluwer, ProVation Medical, Dearborn National Group Policy No. F019103-0001, and Dearborn National:

1. a declaratory judgment pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B), and 28 U.S.C. § 2201, declaring that Plaintiff is entitled to the full amount of Basic Life and AD&D insurance benefits;

2. an Order compelling Defendants to pay Plaintiff forthwith the full amount of life insurance benefits due, including the interest on all unpaid amounts;

3. reasonable attorney fees and costs, pursuant to ERISA § 502, 29 U.S.C. § 1132(g)(1); and

4. such other relief as may be just and appropriate.

Respectfully submitted,

/s/ D. Gil Schuette
D. Gil Schuette (No. 30336)
Mark W. Lenihan (No. 36286)
SIMS|FUNK, PLC
3322 West End Ave., #200
Nashville, Tennessee 37203
(615) 292-9335
gschuette@simsfunk.com
mlenihan@simsfunk.com

*Attorneys for Plaintiff*